**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe, | No. CV-17-01991-PHX-GMS (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion for Default Judgment against Defendants James R. Toadvine, Jr. and Vicki Lynn Toadvine. (Doc. 39.) The Court will grant the Motion as to Mr. Toadvine, but deny it as to Mrs. Toadvine.

**I.  Background.**

On June 23, 2017, Plaintiff Jane Doe, who is represented by counsel, initiated this matter by filing a Complaint naming United States of America, Edward Mendoza, Vanessa Mendoza, James R. Toadvine, Jr., and Vicki Lynn Toadvine as Defendants. (Doc. 1.) On July 10, 2017, the Court screened the Complaint, ordered Defendants to answer the Complaint, and ordered Plaintiff to either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint. (Doc. 11.)

On September 19, 2017, Proofs of Service were filed with the Court as to Defendants James R. Toadvine, Jr. and Vicki Lynn Toadvine ("Defendants"). (Docs. 26, 27.) To date, Defendants have not appeared or challenged Plaintiff's allegations. On October 19, 2017, Plaintiff filed a Request for Entry of Default against Defendants James

R. Toadvine and Vicki Lynn Toadvine. (Doc. 34.) Plaintiff's request is on the basis that the record in this case demonstrates there has been a failure by Defendants to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure. (*Id*.) On October 20, 2017, the Clerk of Court entered default against Defendants James R. Toadvine and Vicki Lynn Toadvine. (Doc. 36.) On November 7, 2017, Plaintiff filed her first Motion for Default Judgment against the Toadvine Defendants. (Doc. 39.)

On December 6, 2017, the Court issued an order directing Plaintiff to file supplemental briefing regarding her Motion for Default Judgment "address[ing] the *Eitel* factors as they pertain to Plaintiff's request for default judgment against Defendant[s]." (Doc. 45.) On December 20, 2017, Plaintiff filed her supplemental brief. (Doc. 55.)

**II. Legal Standard.**

Once a party's default has been entered, the district court has discretion to grant default judgment against that party. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Once jurisdiction is satisfied, the court must determine whether default is judgment is proper under the *Eitel* factors (detailed below). *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

**III. Analysis.**

The Court concludes that it has both subject matter and personal jurisdiction in this action. The Court further concludes that, under the *Eitel* factors, entry of default judgment is warranted against Mr. Toadvine, but not Mrs. Toadvine. Accordingly, the Court will enter default judgment against the Mr. Toadvine in favor of Plaintiff, and dismiss Mrs. Toadvine from the action.

**A. Jurisdiction.**

The Court is satisfied that it has subject matter jurisdiction over this action. Plaintiff brings this action under 28 U.S.C. § 1331. United States district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Here, Plaintiff asserts that Defendant James Toadvine committed sexual abuse in violation of 18 U.S.C. § 2243(b), by engaging in sexual acts with Plaintiff, who was under the custodial, supervisory, and/or disciplinary authority of Defendant United States. (Doc. 1, ¶ 22.)

The Court is satisfied that it has personal jurisdiction over Defendants because, "[a]t all times material to this Complaint, [the Toadvine Defendants] were residents of Maricopa County in the State of Arizona and Defendant [James] Toadvine was acting for and on behalf of his marital community with Vicki Lynn Toadvine." (Doc. 1, ¶ 5.) Defendant James Toadvine is currently an inmate with the Federal Bureau of Prisons. (*Id.*) Because jurisdiction is proper, and the Clerk of Court has entered Defendants' default (doc. 36), the Court will next consider whether default judgment is proper under the *Eitel* factors.

### B. The Eitel Factors.

When deciding whether to grant default judgment, a court should consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to damages, will be taken as true." *Geddes*, 559 F.2d at 560. As explained below, the Court finds that the factors weigh in favor of finding default judgment against Defendant James R. Toadvine, Jr.

///

### 1. Possible Prejudice to Plaintiff.

The first *Eitel* factor considers the possibility of prejudice to Plaintiff if the Court does not enter a default judgment. *Eitel*, 782 F.2d at 1471. Here, Plaintiff served the Toadvine Defendants on August 11, 2017. (Docs. 26, 27.) The Toadvine Defendants have not appeared or responded to Plaintiff's allegations, and Plaintiff has no alternative means by which to resolve its claims in the Complaint. Therefore, this factor weighs in favor of entering a default judgment because the possibility is high that Plaintiff will be prejudiced if one is not entered.

### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint.

Considering the relationship between the second and third *Eitel* factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the Complaint together. *See Eitel*, 782 F.2d at 1471. The Ninth Circuit Court of Appeals has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (citation omitted).

Here, Plaintiff's Complaint includes allegations that Defendant James Toadvine committed sexual abuse in violation of 18 U.S.C. § 2243(b), by engaging in sexual acts with Plaintiff, who was under the custodial, supervisory, and/or disciplinary authority of Defendant United States. (Doc. 1, ¶ 22.) Plaintiff further alleges that Defendant James Toadvine was criminally charged in connection with his illegal actions, admitted his guilt, and was adjudicated as guilty of sexual abuse. (*Id.*, ¶ 23; *see also United States v. Toadvine*, 2:15-cr-01535-PHX-DJH, Docket #31 (August 18, 2016).) In her Complaint, Plaintiff sets forth three claims against the Toadvine Defendants: (1) a *Bivens* action; (2) a negligence claim; and (3) a claim for negligent and intentional infliction of emotional distress. (Doc. 1.)

### i. Count I – Violation of Plaintiff's Constitutional Rights.

"A complaint 'sufficiently sets forth the elements of a *Bivens* claim by alleging a violation of . . . constitutional rights by agents acting under the color of federal law.'" *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1240 (D. Ariz. 2015) (quoting *Morgan v.*

*United States*, 323 F.3d 776, 780 (9th Cir. 2003)). To maintain an action under *Bivens*, a plaintiff must also show that there is no "alternative, existing process for protecting the plaintiff's interests." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009).

The Eighth Amendment protects inmates from sexual abuse at the hands of prison guards. The Ninth Circuit has stated:

> Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers *no* shield. *See Mathie v. Fries*, 935 F. Supp. 1284, 1301 (E.D.N.Y. 1996) (denying qualified immunity to director of prison security because "any reasonable prison Director of Security knew that to try to force unwanted and prohibited sexual acts on a powerless inmate is objectively unreasonable and in violation of the inmates rights"); *Women Prisoners of the Dist. of Columbia Dept. of Corrections*, 877 F. Supp. 634, 665 (D.D.C. 1994) ("Rape, coerced sodomy, unsolicited touching of women prisoners' vaginas, breasts and buttocks by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society'") (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970), *aff'd in part and vacated in part*, 93 F.3d 910 (D.C. Cir. 1996). In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of this alleged assault, and no reasonable prison guard could possibly have believed otherwise.

*Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

Here, Plaintiff alleges "that Defendant James Toadvine's sexual assaults against the Plaintiff amount to a deprivation and violation of Plaintiff's constitutional rights, including but not limited to a deprivation and violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment." (Doc. 55 at 4 (citing Doc. 1, ¶¶ 29-38).) Plaintiff further alleges that "Defendant's violations of Plaintiff's constitutional rights are compensable under *Bivens*[]." (*Id.*) The Court agrees, and finds that Plaintiff has set forth a viable *Bivens* claim against Defendant James R. Toadvine, Jr.

### ii. Count II – Negligence.

An inmate may bring an action under the Federal Tort Claims Act ("FTCA") to recover damages for negligence of a federal prison guard. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006) ("The negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter

jurisdiction."). An inmate may also bring an action under the FTCA "to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 150 (1963).

A negligence claim requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Sanders v. Alger*, 394 P.3d 1083, 1085 (2017), quoting *Gipson v. Kasey*, 150 P.3d 228 (2007). A gross-negligence claim additionally requires a showing of "[g]ross, willful, or wanton conduct." *Armenta v. City of Casa Grande*, 71 P.3d 359, 364 (Ariz. Ct. App. 2003), quoting *Williams v. Thude*, 885 P.2d 1096, 1104 (Ariz. Ct. App. 1994).

Here, Defendant James R. Toadvine, Jr. owed a duty of care to Plaintiff and those similarly situated, of "safekeeping, care . . . [and] protection." *See* 18 U.S.C. § 4042(a)(2) and (3); (Doc. 1, ¶ 48). Pursuant to 18 U.S.C. § 2243(b), Defendant James Toadvine, as a correctional officer/guard, was statutorily precluded from sexually assaulting an inmate, such as the Plaintiff. Defendant James Toadvine owed duties to Plaintiff to exercise the requisite standard of care and skill ordinarily exercised by similar correctional facilities, institutions, agencies, guards, and correctional officers to detect, deter, and prevent sexually abusive behavior and to take reasonable care to control those in their employ. *Id.*

Here, Defendant James Toadvine fell below the standard of care and was negligent by engaging in sexual acts with the Plaintiff and failing to safeguard, care, and protect Plaintiff, who was under Defendant's custody, care, and control. The Court finds that Plaintiff has set forth a viable claim of Negligence against Defendant James R. Toadvine, Jr.

///
///

### iii. Count III – Assault and Battery.

For an assault and battery claim, as it applies to Defendant James Toadvine, Plaintiff must show that Defendant James Toadvine intentionally and unlawfully placed Plaintiff in reasonable apprehension of imminent physical injury and intentionally made offensive physical contact on Plaintiff's person without her consent. *See Lewis v. Dirt Sports LLC*, 259 F. Supp 1039, 1044 (D. Ariz. 2017).

> To succeed on a battery claim, Arizona law requires a plaintiff to prove "that the defendant intentionally engaged 'in an act that results in harmful or offensive contact with the person of another.'" *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1210 (9th Cir. 2016) (quoting *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438 (2003)). Similarly, to succeed on an assault claim a plaintiff must prove "that the defendant acted 'with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehend[ed] imminent contact.'" *Id.* (quoting *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987)). "The two claims are the same except that assault does not require the offensive touching or contact."

(*Id.*)

Here, Defendant James Toadvine was criminally charged in connection with his sexual abuse of the Plaintiff, admitted guilt, and was adjudicated as guilty of "Abusive Sexual Contact with a Ward." *See United States v. Toadvine*, 2:15-cr-01535-PHX-DJH. Defendant Toadvine admitted he intentionally and unlawfully placed Plaintiff in reasonable apprehension of imminent physical injury and intentionally made offensive physical contact on Plaintiff's person without her consent. As a result, Defendant Toadvine is liable for assault and battery against the Plaintiff.

### iv. Count IV – Negligent and/or Intentional Infliction of Emotional Distress.

Finally, Plaintiff's claim for negligent and intentional infliction of emotional distress is predicated on an action or inaction that inflicts emotional distress on another by one's negligent or intentional conduct.

With regard to the tort of intentional infliction of emotional distress, "[t]he three required elements are: *first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and

*third*, severe emotional distress must indeed occur as a result of the defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (italics in original). "Whether the conduct is 'extreme and outrageous' enough to state a claim of relief is a question for the court." *Id.* (citing *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)).

Here, as to his criminal conduct against the Plaintiff, Defendant Toadvine admitted guilt of "Abusive Sexual Contact with a Ward." *See United States v. Toadvine*, 2:15-cr-01535-PHX-DJH. "A sexual assault on an inmate by a guard – regardless of the gender of the guard or of the prisoner – is deeply 'offensive to human dignity.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus Defendant James Toadvine's abusive sexual contacts against the Plaintiff were extreme and outrageous and they violated Plaintiff's basic human and constitutional rights. As a result of his actions, Plaintiff suffered, and continues to suffer, severe and permanent injuries, mental anguish, embarrassment, humiliation, distress, and damages.

### 3. Amount of Money at Stake.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-198-TUC-CKJ, 2008 WL 65604, at *4 (D. Ariz. Jan. 3, 2008).

Here, Plaintiff alleges that from approximately January of 2015 through April 2, 2015, Defendant James Toadvine assaulted Plaintiff on several occasions while she was incarcerated. (Doc. 1, ¶ 17.) Further, Plaintiff alleges that Defendant Toadvine "inappropriately intimidated, coerced, victimized, and assaulted the Plaintiff by, among other things, forcibly kissing her, touching her buttocks, putting his hands underneath Plaintiff's clothes and panties, []inserting his finger into the Plaintiff's vagina, . . . [and] also forced Plaintiff's hand to touch his erect penis." (Doc. 55 at 8 (citing Doc. 1, ¶ 17).)

Plaintiff also asserts that Defendant Toadvine represented to Plaintiff that he would follow her upon her release from prison custody. (*Id.*) Taking Plaintiff's allegations as true, there is no dispute that she suffered acts that are deeply offensive to human dignity. *Schwenk*, 204 F.3d at 1197.

Plaintiff alleges that she "has suffered and continues to suffer severe psychological injuries as a result of Defendants' acts and omissions." (Doc. 55 at 9; *see also* Doc. 39-1 at 2.) Specifically, Plaintiff alleges that "[s]he has experienced, and continues to experience sleep loss, anxiety, fear, depression, humiliation, and fright[,]" she "experiences fear and anxiety on a routine basis[,]" and she "is constantly reminded of the torture she experienced, which has negatively impacted her life and quality of living." (*Id.*) Plaintiff "has been receiving counseling therapy since moving back to Oregon after her release in May of 2015, and she will need constant and on-going therapy for an indefinite amount of time in the future." (Doc. 55 at 9; Doc. 55-4.)

As a result of Defendant James Toadvine's culpable acts, Plaintiff is entitled to damages. Here, Plaintiff is seeking default judgment against the Toadvine Defendants in the amount of $10,000,000.00. (Doc. 39; Doc. 55.) Plaintiff argues that this amount is not excessive, given the crimes alleged. (Doc. 55.) Plaintiff provides the following argument:

> In *Johnson v. Pankratz*, 2 P.3d 1266, 1269 (Ariz. Ct. App. 2000), which was a case involving sexual assault, the Court stated "[t]he traditional rule for battery cases is that general damages or presumed damages of a substantial amount can be recovered merely upon showing that the tort was committed at all." The Court in *Johnson* also noted that "[e]ven when a touching is 'entirely harmless but offensive, [that] contact entitles the plaintiff to vindication of the legal right by an award of nominal damages and . . . to compensation for the resulting mental disturbance, such as fright revulsion or humiliation." (*Id.*) Further, given Defendant James Toadvine's malicious intent and acts of sexually assaulting Plaintiff, Plaintiff is entitled to an award of punitive damages. As these cases illustrate, a battery entitling a plaintiff to compensatory damages may also entitle her to punitive damages. (*Id.* ("In Arizona, if malice is express or may be implied from the nature of the acts and the circumstances, punitive damages are possible.").)

(*Id.* at 9-10.)

Plaintiff adds that she "has been completely traumatized by what has happened to her, and placing a value on Plaintiff's damages can be difficult." (*Id.* at 10.) Plaintiff

attaches "several examples of awards and settlements involving sexual assaults by guards against inmates." (Doc. 55, Ex. E.) The results of these cases reveal a range of awards and settlements inmates who were sexually abused while incarcerated, which include awards and settlements of $15.4 million, $11.5 million, $10 million, $6.7 million, $3.38 million, $1.5 million, $1.2 million, and $1 million. There was also an award of $100 million for 500 inmates.

Plaintiff asserts that her "situation is more severe than the cases in the articles, as she was repeatedly raped over several months, and she was subjected to various means of assault," mentioned above. (Doc. 55 at 10.) Plaintiff also asserts that Defendant James Toadvine "traumatized [her] by telling her that he would follow her upon her release from custody." (*Id.*)

The Court finds the cases attached to Plaintiff's Motion to be only mildly instructive. Plaintiff does not include citations to the cases described in her attachment. Nor does Plaintiff include information about those cases beyond the attached news articles describing them. However, Plaintiff does provide psychological and medical billing records to show that she is seeking counseling for her injuries. (Doc. 55-4 at 1-28 (Ex. D).) Further, at least one court in this district has awarded a similar amount to a victim who was assaulted while at a prison. *Rode v. Credio*, No. CV-14-02354-PHX-SRB, 2016 WL 5109866, at *1 (D. Ariz. Sept. 20, 2016) (awarding $10 million in damages to a plaintiff prison employee that was violently assaulted by an inmate).

The Court finds it is clear that Plaintiff has suffered and continues to suffer severe psychological injuries as a result of Defendants' horrific acts. Plaintiff alleges that she has experienced, and continues to experience sleep loss, anxiety, fear, depression, humiliation, and fright. Further, the severity of her injuries has impacted her relationship with her son and family members as well as other people. She experiences fear and anxiety on a routine basis. She is constantly reminded of the torture she experienced, which has negatively impacted her life and quality of living. These allegations are supported by the medical records provided to the Court.

Given the circumstances, Plaintiff's requested default judgment award of $10,000,000.00 is not overly excessive, and does not weigh against awarding default judgment.

### 4. Possibility of Dispute Concerning Material Facts.

The fifth *Eitel* factor considers the possibility of dispute concerning the material facts. *Eitel*, 782 F.2d at 1471-72. Here, there is very little possibility of dispute concerning the material facts. Defendants have not made any effort to challenge Plaintiff's Complaint or otherwise appear in this case, despite having been personally served with process in this action. Therefore, this factor weighs in favor of entering default judgment.

### 5. Whether Default Was Due to Excusable Neglect.

The sixth *Eitel* factor considers whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. Here, there is no evidence that Defendants failure to appear, or otherwise defend, was the result of excusable neglect. Plaintiff personally served the Defendants James and Vicki Toadvine on August 11, 2017 (docs. 26-27), and the time elapsed since then is substantial. Therefore, this factor weighs in favor of entering default judgment.

### 6. Policy Disfavoring Default Judgment.

Under the seventh *Eitel* factor, a court considers the policy that, whenever possible, cases should be tried on the merits. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b) of the Federal Rules of Civil Procedure, however, indicates that the preference for resolving cases on the merits is not absolute. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Since Defendants have neither appeared nor responded in this action, deciding the case on the merits is "impractical," if not impossible. *See id*. Thus, the seventh *Eitel* factor does not preclude the entry of default judgment. On balance, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendant James R. Toadvine.

### C. Defendant Vicki Lynn Toadvine.

Plaintiff has failed to state a claim against Defendant Vicki Lynn Toadvine. Under Arizona law, each spouse has equal control and rights over the community property and equal power to bind the marital community. Ariz. Rev. S. § 25-214(B). Accordingly, each spouse may contract debts for the benefit of the marital community, and a lawsuit seeking payment of such debts out of the marital property must sue both spouses jointly. *Id.* § 25-215(D). "The Arizona rule is that the community is liable for the intentional torts of either spouse if the tortious act was committed with the intent to benefit the community, regardless of whether in fact the community receives any benefit." *Selby v. Savard*, 655 P.2d 342, 349 (Ariz. 1982). "The controlling question, in determining liability of the marital community for the tort of the spouse, is whether the tort is calculated to be, is done for, or results in a benefit to the community or is committed in the prosecution of community business." *Howe v. Haught*, 462 P.2d 395, 397 (Ariz. Ct. App., 1969). With respect to intentional torts, "the community is not liable for one spouse's malicious acts unless it is specifically shown that the other spouse consented to the act or that the community benefited from it." *Selby*, 655 P.2d at 349.

Under Rule 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In this case, Plaintiff's sole allegation regarding Defendant Vicki Toadvine is that, at all relevant times, James R. Toadvine, Jr. was "acting for and on behalf of his marital community with Vicki Lynn Toadvine." (Doc. 1, ¶ 5.) This bald assertion does not satisfy Rule 8 pleading standards for stating a claim against Defendant or against the Toadvines' marital community. To state a claim against a marital community, a plaintiff must plead

sufficient facts, taken as true, to show that the alleged tortious conduct was either calculated to be, was performed for, or resulted in a benefit to the marital community. *Howe*, 462 P.2d at 397. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Merely alleging that James Toadvine "acted for and on behalf of his marital community" does not make this showing.

The Court considered a nearly identical issue in this case, involving co-Defendants Vanessa Mendoza and Edward Mendoza. There, Defendant Vanessa Mendoza responded to Plaintiff's Complaint by filing a motion to dismiss, arguing that Mr. Mendoza's actions were not taken in furtherance of the martial community. (Doc. 44.) On April 2, 2018, the Court issued an Order granting Defendant Mendoza's Motion. (Doc. 63.) The analysis in this instance is virtually identical. Plaintiff has failed to plead sufficient facts to establish that Mr. Toadvine's actions were taken on behalf of his marital community with Mrs. Toadvine. Accordingly, the Court will decline to enter default judgment against Mrs. Toadvine, and will dismiss her from this action.

**D.      Damages.**

Having found that entry of default judgment against Defendant James R. Toadvine, Jr. is proper here, the next issue for the Court to consider is that of damages. In contrast to other allegations in the Complaint, allegations pertaining to damages are not taken as true. *See TeleVideo Sys., Inc. v. Heidenhal*, 826 F.2d 915, 917-18 (9th Cir. 1987). As a result, "[p]laintiff is required to prove all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." Fed. R. Civ. P. 54(c); *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). "In determining damages, a court can rely on declarations submitted by the plaintiff[.]" *Philip Morris USA, Inc.*, 219 F.R.D. at 498.

///

If the Court determines that the allegations in the complaint establish liability, it must next determine the amount and character of relief to award. *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013); *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993) (a district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment). Un-liquidated and punitive damage require "proving up" at an evidentiary hearing or through other means. *HTS, Inc.*, 954 F. Supp. 2d at 948. "If [] cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Black & Decker, Inc. v. All Spares, Inc.*, No. CV-09-2126-PHX-MHM, 2010 U.S. Dist. LEXIS 87334, *3 (D. Ariz. Aug. 3, 2010) (citing *Philip Morris USA, Inc. v. Castworld Products, Inc.* 219 F.R.D. 494, 498 (C.D. Cal. 2003)).

Plaintiff requests $10,000,000 in damages, but does not identify what portion of that sum is compensatory and what portion is punitive. In her Complaint, Plaintiff alleges she was subjected to assaults by Defendant Toadvine on multiple occasions over a period of months. (*See* Doc. 1, ¶ 17 (alleging that from January of 2015 through April 2, 2015, Defendant James Toadvine assaulted Plaintiff on several occasions while she was incarcerated, during which time he "inappropriately intimidated, coerced, victimized, and assaulted the Plaintiff by, among other things, forcibly kissing her, touching her buttocks, putting his hands underneath Plaintiff's clothes and panties, []inserting his finger into the Plaintiff's vagina, . . . [and] also forced Plaintiff's hand to touch his erect penis.").)

In support of her damages claim, Plaintiff alleges that she "has suffered and continues to suffer severe psychological injuries as a result of Defendants' acts and omissions." (Doc. 55 at 9; *see also* Doc. 39-1 at 2.) Specifically, Plaintiff alleges that while incarcerated, Defendant Toadvine "verbally demanded sexual favors and verbally harassed the Plaintiff," and she "feared retaliation and further abuse if she resisted or reported Defendant[] Toadvine." (Doc. 1, ¶¶ 19-20.) Since being released from prison custody, "[s]he has experienced, and continues to experience sleep loss, anxiety, fear,

depression, humiliation, and fright[,]" she "experiences fear and anxiety on a routine basis[,]" and she "is constantly reminded of the torture she experienced, which has negatively impacted her life and quality of living." (Doc. 55 at 9; *see also* Doc. 39-1 at 2.) Plaintiff "has been receiving counseling therapy since moving back to Oregon after her release in May of 2015, and she will need constant and on-going therapy for an indefinite amount of time in the future." (Doc. 55 at 9; Doc. 55-4.)

In light of this evidence, the Court is satisfied that Plaintiff has sufficiently proven up $2,500,000 in damages. Plaintiff has established extreme suffering, anxiety, and physical and emotional pain that are reasonably probable to be experienced in the future as a result of the injuries Defendant caused her.

The Court finds that Plaintiff has also proved $1,250,000 in punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. *Olson v. Walker*, 781 P.2d 1015, 1018 (Ariz. Ct. App. 1989). Further, punitive damages for tort claims in Arizona are awarded only where the evidence is clear and convincing that the Defendant acted with an "evil mind." *Id.* "An evil mind is found where the defendant intended to injure the plaintiff, or where the defendant, not intending to cause injury, 'consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.'" (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)).

A category of relevant evidence in assessing the reasonableness of the amount of a punitive damage award includes: "the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred, from the defendant's conduct." *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1080 (Ariz. 1987) (citations omitted). "The more reprehensible the act and the more severe the resulting harm, the greater the award of punitive damages that is reasonable under the circumstances." *Id.*[3]

Punitive damage awards also have constitutional limits. "A grossly excessive punitive damage award violates the Due Process Clause of the Fourteenth Amendment to

the United States Constitution because the defendant did not have 'fair notice' of its exposure to the extent of punishment that could be imposed." *Hudgins v. Southwest Airlines, Co.*, 212 P.3d 810, 827 (Ariz. Ct. App. 2009) (citing *BMW of N. AM., Inc. v. Gore*, 517 U.S. 559, 489 (1996)). Relevant guideposts for determining the constitutionality of a punitive damage award include "the degree of reprehensibility of the defendant's misconduct, [and] the ratio between compensatory and punitive damages." *Id.* at 490. The reprehensibility of Defendant's conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW*, 517 U.S. at 575. "Acts of violence or threats of bodily harm . . . [are] the most reprehensible." *Hudgins*, 212 P.3d at 490 (quoting *Florez v. Delbovo*, 939 F. Supp. 1341, 1348-49 (N.D. 111. 1996)). Finally, with regard to the ratio between compensatory and punitive damages, the Supreme Court has held that "single-digit multipliers are more likely to comport with due process." *Id.* at 491.

Here, as detailed above, Plaintiff suffered numerous assaults over a prolonged timeframe by Defendant. Defendant was Plaintiff's Corrections Officer, and Plaintiff was unable to escape his advances. Plaintiff feared retaliation and further abuse if she resisted Defendant's attacks, or reported his actions. (Doc. 1, ¶ 20.) Defendant Toadvine was criminally charged in connection with his illegal actions, admitted his guilt, and was adjudicated as guilty of sexual abuse. *See United States v. Toadvine*, 2:15-cr-01535-PHX-DJH. Based on these facts, this Court finds that an award of punitive damages is appropriate.

Defendant was aware of the risk of harm from his intentional, violent conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (in assessing the degree of reprehensibility of a defendant's conduct, courts consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated incidents or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or

mere accident."). Finally, the Court finds that the 1 to 0.5 ratio of compensatory to punitive damages is reasonable and comports with due process in this case. *See Rode*, 2016 WL 5109866, at *1.

For the reasons above, the Court finds that Plaintiff has proven up $3,750,000 of her requested award of damages.

**IV. Conclusion.**

Because the Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants James R. Toadvine, Jr., the application of the *Eitel* factors weighs in favor of the entry of default judgment against James R. Toadvine, Jr., and Plaintiff has sufficiently proven up her damages, the Court will grant Plaintiff's Motion for Default Judgment against James R. Toadvine, Jr.

Because Plaintiff has failed to plead sufficient facts to state a claim against Defendant Vicki Lynn Toadvine, the Court will deny the Motion for Default Judgment against her.

**IT IS ORDERED:**

1. The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Default Judgment (doc. 39) only, and the Motion is **granted in part** as provided in this Order.

2. The Clerk of Court is directed to enter judgment accordingly, and award damages in the amount of $3,750,000.00, plus post-judgment interests, to Plaintiff, and against Defendant James R. Toadvine, Jr.

3. Defendant Vicki Lynn Toadvine is dismissed, without prejudice, from this action.

///
///
///
///
///

4. This action is not to be terminated, as Plaintiff's remaining claims are still pending against the other Defendants.

Dated this 30th day of May, 2018.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge